AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,

v.

Nancy HART, Defendant,

Joe Hart, Jr., Respondent,

Melvin Dewey, Dixie Dewey, Brian
Dewey, Susan Hollingsworth,
Appellants.

Nos. WD 57969, WD 58135.

Missouri Court of Appeals,
Western District.

Dec. 29, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 2001.

Application to Transfer Denied
April 24, 2001.

Ralph E. Pratt, Independence, for defendant.

Andrew J. Gelbach, Warrensburg, for appellants.

M. Courtney Koger, Kansas City, for respondents.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Melvin Dewey, Dixie Dewey, Brian Dewey and Susan Hollingsworth (Appellants) appeal the circuit court's denial of their motion for prejudgment interest, following the circuit court's entry of a consent judgment pursuant to the agreement of Appellants and Joe A. Hart, Jr. Appellants claim on appeal that the circuit court erred in not awarding them prejudgment interest in addition to the amount of the consent judgment because they complied with all of the requirements of § 408.040.2, RSMo 1994,[1] and they received a judgment in excess of their demand for payment. Joe A. Hart, Jr., and American Family assert that no timely notice of appeal was filed, and request that the appeal be dismissed for lack of jurisdiction. Because this court finds that the notice of appeal was not timely filed and this court is with-

out jurisdiction to hear this appeal, the appeal is dismissed.

## I. Factual and Procedural Background

On May 11, 1997, Appellants were injured in a motor vehicle accident when a vehicle driven by Joe Hart, Jr., crossed the center line and struck the van in which they were riding. The van was owned by Melvin and Dixie Dewey, and driven by Melvin Dewey. Nancy Hart, Mr. Hart's mother and a passenger in his car, was also injured in the collision.

On June 11, 1997, Melvin and Dixie Dewey made a formal, written demand on Mr. Hart, pursuant to § 408.040, for payment of their personal injury claims. They demanded payment of $90,000 for the personal injury claim of Dixie Dewey, $10,000 for the loss of services claim of Melvin Dewey, $25,000 for the personal injury claim of Melvin Dewey, $5,000 for the loss of services claim of Dixie Dewey, and $7,500 for property damages. On June 18, 1997, Brian Dewey made a formal, written demand on Mr. Hart, pursuant to § 408.040, for payment of $10,000 for his personal injury claim. Also on June 18, Susan Hollingsworth demanded payment of $50,000 for her personal injury claim. Each of these offers to settle was sent by certified mail and left open for sixty days in accordance with the statute.

At the time of the accident, American Family Mutual Insurance Company insured Mr. Hart's car through an automobile liability policy with policy limits of $25,000 per person and $50,000 per accident. Because the total claims asserted against Mr. Hart exceeded his policy limits, American Family did not pay the proceeds to Appellants.[2] Instead, American

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

2. In addition to the demands by Appellants, Nancy Hart, St. Luke's Hospital and Liberty Hospital made claims against the policy lim-

Family referred the case to outside counsel, who attempted to reach an agreement with counsel for Appellants and counsel for Ms. Hart on how the policy proceeds were to be apportioned among the various defendants. Attempts to resolve the matter failed and American Family initiated an interpleader action on June 23, 1998. The petition for interpleader named Joe Hart, Nancy Hart, Melvin Dewey, Dixie Dewey, Brian Dewey, Susan Hollingsworth, St. Luke's Hospital of Kansas City, and Liberty Hospital as defendants.

On March 12, 1999, the circuit court granted American Family's motion for interpleader and ordered American Family to pay its policy proceeds of $50,000, less $80 costs for filing fees already paid, into the court registry. Appellants subsequently filed a cross-claim and petition for damages against Mr. Hart for their personal injuries. In their cross-claim and petition, Appellants included a claim for prejudgment interest pursuant to § 408.040.

In June 1999, Mr. Hart and Appellants reached a settlement of the case. In accordance with Rule 77.04, Mr. Hart made offers of judgment for sums certain and court costs, which were accepted by Appellants.[3] Appellants and Mr. Hart also executed a "Contract to Limit Recovery Pursuant to Missouri Revised Statute 537.065," wherein Appellants agreed not to levy execution upon the personal assets of Mr. Hart but they retained the right to recover from "any available insurance coverages provided by all contracts of insurance of all insurance companies in full force and effect as of the date of [the] accident in question that provided any coverages for [Appellants'] injuries or damages" and from any other entities who might be liable to Appellants. The Offers Of Judgments and the respective Acceptances of the Offers of Judgments in favor of Brian Dewey for $100,000, Susan Hollingsworth for $100,000, Dixie Dewey for $250,000, and Melvin Dewey for $150,000 were filed with the court on June 24, 1999. The contract to limit recovery was also filed with the circuit court on that date.

On September 27, 1999, the circuit court entered judgment under Rule 77.04 according to the offers and acceptances. Additionally, the court executed a separate "Payout Order and Judgment Disposing of Remaining Issues and Parties." In this judgment, the court recognized the consent judgment entered under Rule 77.04 and ordered distribution of the interpleaded funds, including any accrued interest, according to the parties' agreement. The judgment also found that Ms. Hart and St. Luke's had negotiated a resolution of St. Luke's hospital lien and dismissed the cross-claim of Nancy Hart.[4] The circuit court further found that American Family was discharged from the case when it deposited its policy proceeds into the court. In the judgment and payout order, the court stated that "[t]his Order disposes of

---

its. St. Luke's Hospital asserted a statutory hospital lien against Ms. Hart. Liberty Hospital asserted a hospital lien against Melvin Dewey, Dixie Dewey and Susan Hollingsworth.

3. Rule 77.04 states in pertinent part:
 A party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If ... the offer is accepted, either party may then file the offer and notice of acceptance ... and thereupon judgment shall be entered.

4. American Family had previously voluntarily dismissed Liberty Hospital from the interpleader action because Liberty Hospital provided lien releases for its claims against Susan Hollingsworth, Dixie Dewey and Melvin Dewey.

all remaining parties and issues before the Court."

Four days later, on October 1, 1999, Appellants filed a motion requesting that the court award them prejudgment interest, since they had received a judgment in excess of their demands pursuant to § 408.040. Mr. Hart and American Family filed suggestions in opposition to the motion for prejudgment interest, arguing that Mr. Hart's offers of judgment, which were accepted by Appellants, did not include prejudgment interest and, by the acceptances and contract to limit liability, Appellants had released Mr. Hart of all liability other than the settlement amounts and court costs. They further argued that prejudgment interest was inappropriate in an equitable action where the majority of the delay was attributed to Appellants. In an order dated November 29, 1999, the circuit court denied Appellants' motion for prejudgment interest, without explanation.

Appellants filed a notice of appeal on December 2, 1999, from the November 29th order. Believing that the November 29th, order was not properly designated a "judgment" as required by Rule 74.01(a) and the Supreme Court's decision in *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997), this court, through its staff counsel, sent a letter to counsel for Appellants and Mr. Hart. The letter instructed counsel that the legal file on appeal needed to be supplemented with a document appropriately denominated as a "judgment" in order to avoid the case being dismissed for lack of an appealable judgment. Thereafter, on January 4, 2000, the circuit court re-entered its November 29th order as a "Judgment and Order." Appellants filed a notice of appeal on January 12, 2000, from the January 4th judgment.

## II. Jurisdiction is Not Proper since the Notice of Appeal was Not Timely Filed

### A. September 27th Judgments Disposed of All Issues On Appeal

■ Before considering the merits of this appeal, this court must consider Mr. Hart's and American Family's challenge to the jurisdiction of this court based on their claim that the appeal was not timely filed. *Koppenaal v. Director of Revenue*, 987 S.W.2d 446, 448 (Mo.App.1999). An appellate court "must first determine [its] jurisdiction before proceeding to the merits of the appeal." *Id.* Mr. Hart and American Family originally challenged jurisdiction in their motion to dismiss the appeal, which was denied by this court. After considering the matter further, however, this court believes their challenge to jurisdiction has merit.

■ Jurisdiction is vested in an appellate court by the timely filing of a notice of appeal. *River Salvage, Inc. v. King*, 11 S.W.3d 877, 879 (Mo.App.2000); Rule 81.04(a). A notice of appeal must be filed 10 days after a judgment becomes final. Rule 81.04(a); *Taylor v. United Parcel Service, Inc.*, 854 S.W.2d 390, 392 (Mo. banc 1993). A "judgment" has been defined by the legislature in § 511.020 as "'the final determination of the right of the parties in an action.'" *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). "An appealable judgment disposes of all issues in a case, leaving nothing for future determination." *Id.* at 852. A judgment is final 30 days after the judgment is entered, unless an authorized after-trial motion operates to extend the time. Rule 81.05(a)(1).

■ To determine whether a timely notice of appeal was filed in this case, this court considers the four orders entered by

the circuit court on three different dates. It is necessary to first determine which of the orders, if any, was an appealable judgment, in order to assess the timeliness of the notice of appeal. Mr. Hart and American Family argue that the two orders entered on September 27th disposed of all issues in the case and were the appealable judgments. They further argue that the September 27th judgments became final thirty days later and the notice of appeal was required to be filed by November 6th, which it was not. Appellants argue that the September 27th judgments left the issue of prejudgment interest unresolved, so they were not appealable. They claim that either the November 29th or January 4th judgment finally resolved all of the issues, and they timely filed a notice of appeal from both of those judgments.

 When undertaking to understand the meaning of these judgments, this court makes its own independent assessment, since "[c]onstruction of a court order is a question of law." *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App.1996). "The general rules of construction for written instruments are used to construe court judgments." *Dover v. Dover*, 930 S.W.2d 491, 495 (Mo.App.1996). In construing a court's judgment, the words and clauses used in a judgment are to be construed according to their natural and legal import. *Panettiere v. Panettiere*, 945 S.W.2d 533, 539 (Mo.App.1997). "If the language employed is plain and unambiguous, there is no room for interpretation and the effect thereof must be declared in the light of the literal meaning of the language used." *Estate of Ingram v. Rollins*, 864 S.W.2d 400, 403 (Mo.App.1993). "Our task is to ascertain the intention of the [circuit] court in entering the order." *Jacobs*, 922 S.W.2d at 769.

 Here, we begin with the first two judgments, which must be examined to see if all issues of the case were resolved. Applying general rules of construction, "[s]everal instruments made at the same time and relating to the same subject matter may be read together as one [instrument], and recitals in one may be explained by reference to the other." *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo.App.1995). Under this rule, the two judgments entered on September 27, 1999, must be read together since they were made at the same time and relate to the same subject matter, that is, they were part of a single action by the circuit court in ruling the cause.

The first is merely titled "Judgment." It states that it is being entered in accordance with Supreme Court Rule 77.04 following the filing with the court of Mr. Hart's offers of judgment and Appellants' acceptance of the offers. Under Rule 77.04, the court was required to enter judgment pursuant to the agreement, with the judgment constituting a consent judgment. *See State ex rel. Riggs v. Clark*, 14 S.W.3d 719, 721 (Mo.App.2000). The second judgment was titled "Payout Order and Judgment Disposing of Remaining Issues and Parties." It recognized that a separate judgment had been entered that disposed of Appellants' cross-claim and petition pursuant to the settlement agreement reached between them and Mr. Hart. It then addressed the disposition of each claim and party included in the original interpleader action or that was subsequently added and precisely stated that the order disposed of all remaining parties and issues before the circuit court.

Nothing about the language of the judgments was ambiguous. Thus, this court will construe the judgments according to the plain meaning of the language used. Most significant, the intent of the court to dispose of all parties and issues in the case is expressly stated. The court notes the

precise disposition of each party's claim, and the payout order and judgment specifically refers to and recognizes the separate consent judgment.

Appellants argue that they were automatically entitled to prejudgment interest under § 408.040, and thus, the judgment could not be final without awarding prejudgment interest, regardless of the intent of the court. In support of this argument Appellants cite several cases, including *Call v. Heard,* 925 S.W.2d 840 (Mo. banc 1996); *Hurst v. Jenkins,* 908 S.W.2d 783 (Mo.App.1995); *Lester v. Sayles,* 850 S.W.2d 858 (Mo. banc 1993); and *Larabee v. Washington,* 793 S.W.2d 357 (Mo.App. 1990). Each of these cases, however, involved an award of prejudgment interest following a trial by either a judge or a jury. In contrast, the judgment in this case was a consent judgment, entered according to the parties' settlement.

■■■ While Appellants argue in their brief that "a judgment is a judgment," that is not true. A consent judgment can be *distinguished* in that it "is different in nature from a judgment rendered on the merits, because it is primarily the act of the parties rather than the considered judgment of the court." 46 AM.JUR.2D *Judgments* § 208 (1994). A consent judgment "does not represent the decision of a judge after a hearing upon disputed issues[,]" but is "an agreement between the parties which resolve their differences" and is "contractual in nature." *Boillot v. Conyer,* 887 S.W.2d 761, 763 (Mo.App. 1994). Thus, the judgment entered is based upon the terms of the agreement between the parties. Other jurisdictions that have addressed this issue have found that a party's failure to expressly provide for prejudgment interest in an agreement

precludes a court from entering a judgment that includes prejudgment interest in addition to the amount of the parties' agreement.[5]

In *Madison v. City of Detroit,* 182 Mich. App. 696, 452 N.W.2d 883, 884 (1990), the Michigan Court of Appeals addressed whether the entry of a consent judgment following a settlement precluded an award of prejudgment interest where the judgment was silent with respect to prejudgment interest. There, the court affirmed the lower court's denial of an award of prejudgment interest where "there was no agreement, understanding, or discussion between the parties in this case as to prejudgment interest" and found that the "parties' mutual consent to the judgment is deemed to include all interest then accrued." *Id.* at 885. In so holding, the court relied on an earlier decision by the court, *Young v. Robin,* 146 Mich.App. 552, 382 N.W.2d 182 (1985). There, too, the parties had "settled a tort claim by agreeing to enter into a consent judgment for a sum certain." *Madison,* 452 N.W.2d at 885. The court in *Young* determined that "the mutual consent of the parties to the judgment did not include an agreement as to prejudgment interest." *Id.*

The Tenth Circuit Court of Appeals also addressed this issue with respect to Rule 68 consent judgments in *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 527 (10th Cir. 1992). There the issue was whether a consent judgment entered for a specific amount, but silent with respect to prejudgment, could later be amended upon "a plaintiff's subsequent motion for pre-judgment interest." *Id.* The court held that "a Rule 68 consent judgment for a sum certain must, absent indication otherwise, be

**5.** This is consistent with general principles of contract law that require reservations or limitations in the scope of settlement agreements

to be clearly expressed. *See Kansas City v. Colbert,* 978 S.W.2d 421, 423 (Mo.App.1998).

deemed to include pre-judgment interest." *Id.* Here, the language of the two judgments indicates the intention of the circuit court to resolve all the issues in the September 27th judgments and this intention is consistent with the intent apparent from the written agreements of Appellants and Mr. Hart.

Nevertheless, Appellants argue that even if the court intended to resolve all of the issues, the judgment could not be final if it does not address the issue of prejudgment interest, citing *McHaffie By and Through Wieland v. Bunch,* 951 S.W.2d 340 (Mo.App.1997). In *McHaffie,* the Southern District dismissed the appeal as not final because the judgment failed to dispose of the issue of prejudgment interest. *Id.* at 341. While *McHaffie* does stand for the principle that failure to address the issue of prejudgment interest will cause the judgment to be non-final and non-appealable, it does not govern under the facts of this case. In *McHaffie,* there was an original judgment that assessed prejudgment interest following a jury verdict. *See id.* at 340. The subsequent judgment entered followed a retrial, by jury, which was required to reallocate fault pursuant to the order of the Supreme Court. *Id.* It is clear from *McHaffie* that the issue of prejudgment interest, having been once assessed, remained at issue following the second judgment. In retrying the case, the plaintiff had not taken any action to relinquish plaintiff's right to prejudgment interest. Here, the offers of judgment and acceptances, as well as the contract to limit recovery, resolved all the issues in the case and the issue of prejudgment interest was not preserved for future determination.

■ Appellants entered into agreements with Mr. Hart for set amounts of money that did not make reference to additional payments for prejudgment interest

and did not reserve the right to pursue an award for prejudgment interest against Mr. Hart. Appellants have no claim for an automatic award of prejudgment interest where they failed to reserve the right in either the acceptances of the offers of judgment or in the contract to limit recovery. Thus, the judgments of the circuit court entered on September 27, 1999, were final for purposes of appeal, having left nothing to be resolved and disposing of all of the issues of the parties.

Having found that the judgments of September 27th were appealable, the inquiry turns to whether a notice of appeal was timely filed. The September 27th judgments became final thirty days after entry unless an authorized after-trial motion was filed, and a notice of appeal must be filed within ten days after the judgments become final. Appellants' first notice of appeal was filed on December 2, 1999, more than forty days after entry of the September 27th judgments. Without an authorized after-trial motion to extend the jurisdiction of the court, the notice of appeal was untimely.

**B. Time for Filing Appeal not Extended because No Authorized After Trial Motion Filed**

■ An authorized after-trial motion extends the time at which a judgment becomes final for up to 90 days. Rule 81.05(a)(2). An authorized after-trial motion "is a motion for which the rules expressly provide." *State, Department of Labor and Industrial Relations v. Ron Woods Mechanical, Inc.,* 926 S.W.2d 537, 540 (Mo.App.1996). In *Taylor v. United Parcel Service, Inc.,* 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993), the Supreme Court recognized six authorized after-trial motions expressly provided for by the rules: (1) "a motion to dismiss without prejudice after the introduction of evidence is com-

menced under Rule 67.01;" (2) "a motion for directed verdict under Rule 72.01(a);" (3) "a motion for judgment notwithstanding the verdict under Rule 72.01(b);" (4) "a motion to amend the judgment [under then-] Rule 73.01(a)(3)," now Rule 78.04; (5) "a motion for relief from judgment or order under Rule 74.06(a) and (b), but see, Rule 74.06(c);" and (6) "a motion for a new trial under [then-] Rule 78," now Rule 78.04.

Additionally, motions that operate as a motion for new trial, such as a motion for additur, are also authorized after-trial motions. *See Massman Construction Co. v. Missouri Highway & Transportation Commission,* 914 S.W.2d 801, 802–03 (Mo. banc 1996).[6] The Supreme Court established the basis for this ruling when, in *Taylor,* it held that a "Motion to Reconsider the Order of the Court Granting Defendant's Motion for Summary Judgment" was for all purposes a motion for a new trial and, thus, an authorized after-trial motion. *Taylor,* 854 S.W.2d at 393. In so finding, the court stated that the "motion claim[ed] that the trial court committed an error of law in sustaining the ... motion for summary judgment" and "[it] place[d] before the trial court allegations of error." *Id.* The Court noted that there is a "general tendency ... to construe improperly titled or crudely fashioned after-trial motions liberally as motions for new trial." *Massman,* 914 S.W.2d at 803.

■ The motion filed by Appellants was entitled a "Motion for Prejudgment Interest Pursuant to Missouri Revised Statute 408.040." In the motion, appellants claimed that they had met the re-quirements of 408.040, and they were thus entitled to prejudgment interest as a matter of law. This motion clearly is not a motion to dismiss without prejudice after the introduction of evidence is commenced, a motion for a directed verdict, a motion for judgment notwithstanding the verdict, or a motion for relief from judgment or order under Rule 74.06(a) and (b). Of the after-trial motions authorized by *Taylor,* the only motion it might be is a motion for new trial or a motion to amend the judgment under then-Rule 73.01(a)(c).

For Appellants' motion for prejudgment interest to be considered a motion for new trial, it must allege errors of fact or law in a trial. *See Taylor,* 854 S.W.2d at 393. It does not. Appellants' motion does not refer to any error of fact or law by the court in entering its September 27th judgments, so it cannot be a motion for new trial.

The only other authorized after-trial motion to consider is a motion to amend under Rule 73.01(a)(5).[7] In requesting an award of prejudgment interest, however, Appellants are not seeking to amend the September 27th judgments. Rather, Appellants argue that without an award of prejudgment interest, the September 27th judgments were not final judgments. This court has held that a party's "failure to specifically rely on Rule 73.01(a)(5) in [its] motion is sufficient, in itself, to deny it the benefits of this rule." *Ron Woods Mechanical,* 926 S.W.2d at 540. Appellants in this case clearly do not rely upon the rule. Thus, their motion cannot be considered a motion to amend under Rule 73.01(a)(5).

6. The basis for this rule is found in the prior version of Rule 81.05, which states that "[a]uthorized after-trial motions shall be treated as, and as a part of, a new trial motion...." With respect to additur, a court has the option of granting the motion for additur or granting a new trial. *Norris v. Barnes,* 957 S.W.2d 524, 530 (Mo.App.1997).

7. This rule was amended effective January 1, 2000. The prior version was in effect at the time of the judgment.

 Accordingly, Appellants' motion for prejudgment interest did not qualify as an authorized after-trial motion. As a result, the only rule the circuit court could have utilized to consider Appellants' motion would have been Rule 75.01.[8] *See e.g., Bank of Kirksville v. First Bank Centre,* 924 S.W.2d 884, 886 (Mo.App.1996). Under Rule 75.01, the circuit court can "vacate, reopen, correct, amend, or modify its judgment" for good cause, but it only has the authority to act for thirty days after the entry of judgment. Because Appellants' motion for prejudgment interest did not qualify as an authorized after-trial motion that could extend the time before the September 27th judgments became final, the court was required to rule on the motion within thirty days after the entry of judgment. *Koppenaal v. Director of Revenue, State of Missouri,* 987 S.W.2d 446, 451 (Mo.App.1999). It did not do so.

### Conclusion

 The judgments which disposed of all issues in the case were entered on September 27, 1999. Because there was no authorized after-trial motion filed, the judgments became final and appealable thirty days later on October 27, 1999, and, when no notice of appeal was filed within ten days of that date, the circuit court lost jurisdiction. Having lost jurisdiction, the circuit court's order entered November 29, 1999, denying Appellants' motions for prejudgment interest, was therefore null and void. Likewise, the January 4, 2000, order obtained upon direction from this court was null and void. The notices of appeal were filed from each of these null and void judgments and not within ten days of the September 27th judgments becoming final.

---

**8.** Rule 75.01 states in pertinent part:
 The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the

Because the notice of appeal was not filed until December 2, 1999, it "was filed too late to invoke the jurisdiction of the appellate court." *Ron Woods Mechanical,* 926 S.W.2d at 541.

This appeal is dismissed.

All concur.

parties an opportunity to be heard, and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time....